IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
SAN ANTONIO DIVISION

COLUMBA WILSON,                        §
                                       §
            Plaintiff,                 §
                                       §
v.                                     §          5:14-CV-140-RP
                                       §
NORTH EAST INDEPENDENT SCHOOL          §
DISTRICT, ET AL.,                      §
                                       §
            Defendants.                §

## ORDER

Before the Court are Defendants North East Independent School District ("NEISD"), Joel Treviño, Brian G. Gottardy, Wallace McCampbell, Mark Contreras, Gabriel Dominguez, Susan Galindo, and Letti Bresnahan's Motion for Summary Judgment filed September 23, 2014 (Dkt. #51); Plaintiff Columba Wilson's Response to Defendants' Motion, filed October 13, 2014 (Dkt. #57); Defendants' Reply to Plaintiff's Response, filed October 27, 2014 (Dkt. #64); Plaintiff's Response to Version of the Facts Contained in Defendants' Reply, filed November 3, 2014 (Dkt. #64); Defendants' Amendment to their Motion for Summary Judgment, filed November 12, 2014 (Dkt. #68);  Plaintiff's Response to Defendants' Amendment, filed November 25, 2014 (Dkt. #69); Defendants' Reply to Plaintiff's Response, filed December 2, 2014 (Dkt. #70); Plaintiff's Cross Motion for Summary Judgment, filed October 6, 2014 (Dkt. #54); and Defendants' Response to Plaintiff's Cross Motion, filed October 17, 2014 (Dkt. #58).

Chief Judge Fred Biery referred the case to United States Magistrate Judge Pamela A. Mathy on March 7, 2014.  (Dkt. #8).  Judge Mathy filed her Report and Recommendation on the above-mentioned motions and briefs on December 5, 2014, recommending that this Court grant Defendants' Motion for Summary Judgment, deny Plaintiff's Motion for Summary Judgment, and dismiss each of Plaintiff's claims with prejudice.  (Dkt. #71).  Plaintiff filed her Objections to

Judge Mathy's Report and Recommendation on December 22, 2014, (Dkt. #73), and Defendant filed a Response to Plaintiff's Objections on January 5, 2015.  (Dkt. #74).  This case was reassigned from Chief Judge Biery to Judge Robert Pitman on January 7, 2015.  (Dkt. #75).  In light of Plaintiff's objections, the Court has undertaken a *de novo* review of the entire case file in this action and finds that the magistrate judge's Report and Recommendation should be adopted in part and rejected in part.

## BACKGROUND

Plaintiff Columba Wilson is the grandmother and guardian of two children who receive special education services at schools within the NEISD.  (Dkt. #51, at 2).  Over the years, Wilson has been very active in the education of her grandchildren—speaking at numerous NEISD board meetings in support of the school district's special education services.  On December 9, 2013, the NEISD held its monthly Board of Trustees meeting.  (Dkt. #51, Ex. 2 ("Treviño dep."), at 11).  At the meeting Wilson spoke privately to Defendant Joel Treviño, NEISD's Executive Director of HR, in a hall outside the room where the meeting was being held.  (Treviño dep., at 11-15).  She was questioning Treviño about HR's investigation into an NEISD staff member following a complaint that she filed previously.  (Dkt. #54, at 3).  According to Treviño, Wilson became hostile during the conversation—repeatedly calling him a liar and assaulting him by grabbing the fingers of his right hand.  (Treviño dep., at 27, 48).

Directly after the incident, Treviño spoke with members of the NEISD Police Department about the alleged assault.  (Treviño dep., at 17, 34).  A few days later, following an investigation, the NEISD Police Department issued Wilson a criminal trespass warning ("CTW"), which stated that she was "prohibited from appearing on" . . . "all NEISD facilities" . . . based on "inappropriate behavior at school board meeting."  (Dkt. #54, Ex. 1).  The CTW further provided that if Wilson wished to appear at any NEISD facility in the future, she would need to obtain "written permission from either the Principal of the campus or the NEISD Police Department" and that the warning would remain in effect "for a period of 2 years."  (*Id.*).  Additionally, Treviño

filed criminal charges against Wilson, which were subsequently dismissed by the Bexar County Justice of the Peace.  (Dkt. #65, Ex. 1).

Following the issuance of the CTW, Wilson requested permission to attend a board meeting held on February 10, 2014.  (Dkt. #51, Ex. 1 ("Wilson dep."), at 95-96).  Ultimately, the request was denied.  (Wilson dep., Ex. 7, 9).  She was, however, provided the opportunity to write to the Board of Trustees directly, provide written comments for the principal to give to the board members, or send a representative to the board meeting to speak on her behalf.  (*Id.*).

On February 14, 2014, Wilson filed suit against the NEISD and a number of individual NEISD and NEISD Police Department employees.  In her complaint, Wilson raises fifteen separate causes of action, each alleging a federal constitutional violation, and seeks a declaratory judgment that defendants violated her constitutional rights.  Additionally, Wilson seeks injunctive relief and actual and punitive damages for "loss of employment time in dealing with the cause, for damage to her reputation, for other economic damages, and for mental anguish[ ] and/or emotional distress."  (Compl. ¶ 7.1).

Shortly thereafter, once Treviño's criminal charges had been dismissed, the NEISD lifted Wilson's CTW, and since that time has permitted her on NEISD facilities.  (Dkt. #68, at 1).

## ANALYSIS

Judge Mathy entered a Report and Recommendation on the parties' dispositive motions on December 5, 2014.  In the Repot and Recommendation, Judge Mathy found (1) that although Wilson's claim for injunctive relief became moot when the school district lifted her CTW, her claims for declaratory relief and damages remained justiciable, (2) that even though Wilson's claims were not moot, each failed as a matter of law, (3) that Defendants' motion for summary judgment should be granted, (4) that Wilson's motion for summary judgment should be denied, and (5) that each of Wilson's claims should be dismissed with prejudice.

Although Wilson objects to Judge Mathy's Report and Recommendation on a number of grounds, her most persuasive objections pertain to her First Amendment prior restraint on

3

freedom of expression claim and her related Fourteenth Amendment procedural due process claim. Specially, Wilson argues (1) that the Report and Recommendation erred in finding that the CTW operated as a constitutionally permissible time, place, and manner restriction, rather than a prior restraint on Plaintiff's freedom of expression, and (2) that the Report and Recommendation erred in finding that the NEISD afforded Plaintiff a constitutionally adequate avenue for challenging the CTW. These objections are addressed below.

## A. Prior Restraint on Freedom of Expression

Wilson argues that the CTW issued by the NEISD operated as a prior restraint on her First Amendment freedom of expression. Generally, prior restraints "face a well-established presumption against their constitutionality." *Marceaux v. Lafayette City-Parish Consol. Government*, 731 F.3d 488, 493 (5th Cir. 2013). This heavy presumption is not, however, "a standard of review, and judicial decisions analyzing prior restraints have applied different standards of review depending on the restraint at issue." *Catholic Leadership Coal. of Tex. v. Reisman*, 764 F.3d 409, 438 (5th Cir. 2014). Thus, to determine the appropriate standard of review for this claim, the Court will analyze the CTW and its restrictions under traditional forum analysis. Under this analysis, the first step is to determine whether the claim involves protected speech, the second is to identify the nature of the forum, and the third is to assess whether the justifications for exclusion from the relevant forum satisfy the requisite standard. *Cornelius v. NAACP Legal Defense & Educ. Fund, Inc.*, 473 U.S. 788, 797 (1985).

As an initial matter, the Court finds that speech from a grandmother during the public comment portion of a school board meeting regarding (1) the education of her grandchild, (2) the school system's special education programs generally, or (3) any other matter related to school governance, is protected speech under the First Amendment.[1] While the CTW issued

---

[1] In the Report and Recommendation, Judge Mathy states that speech is only constitutionally protected if it "addresses a matter of public concern." (Report and Recommendation, at 47). She therefore concludes that "to the extent the content of plaintiff's speech involves matters of private concern—for example, to the extent plaintiff wishes to speak at a regular board meeting about a particular

here does not explicitly contemplate restricting Wilson's speech, because it acts to exclude her from school board meetings, it is effectively a categorical ban on *all speech*—including speech that would be protected in the context of a school board meeting.  Thus, because the CTW affected Plaintiff's ability to engage in constitutionally protected speech, the Court must continue the forum analysis.

The Supreme Court recognizes four types of forums for First Amendment purposes. The first is the traditional public forum, which includes things like "streets and parks which 'have immemorially been held in trust for the use of the public, and, time out of mind, have been used for purposes of assembly, communicating thoughts between citizens, and discussing public questions.'"  *Perry Educ. Ass'n v. Perry Local Educators' Ass'n*, 460 U.S. 37, 45 (1983) (quoting *Hague v. CIO*, 307 U.S. 496, 515 (1939)).  The second category is the designated public forum. These typically "consist[ ] of public property which the state has opened for public use by the public as a place of expressive activity."  *Id.*  In both traditional and designated public forums, the "rights of the state to limit expressive activity are sharply circumscribed."  *Id.*  In these forums, if the state is enforcing a content-based exclusion, it must show that the regulation is narrowly tailored to serve a compelling state interest.  *Id.*  The state may also enforce regulations of time, place, and manner in these forums, so long as the regulations are content-neutral, are narrowly-tailored to serve a significant government interest, and leave open "ample alternative channels of communication."  *Id.*

The third category—often considered a subset of the second—is the limited public forum.  *See Chui v. Plano Sch. Dist.*, 260 F.3d 330, 345-47 & ns.10–12 (5th Cir. 2001) (noting the confusion courts have encountered when attempting to distinguish "designated public forums" from "limited public forums").  This category is generally thought to be similar to a

---

student or district employee—plaintiff has not established that she is entitled to speak" on these matters. (Report and Recommendation, at 48).  This appears to be a confluence of two similar, but importantly separate, branches of First Amendment jurisprudence.  Although the public-concern/private-concern dichotomy plays an important role in cases involving the speech of government employees, this distinction is not relevant to a freedom of expression claim brought by a private citizen.

designated public forum that is "created for a limited purpose such as use by certain groups, or for the discussion of certain subjects." *Perry Educ. Ass'n*, 460 U.S. at 46 n.7 (citations omitted); *see also Doe v. Santa Fe Indep. Sch. Dist.*, 168 F.3d 806, 819 (5th Cir. 1999) ("A designated public forum may, of course, be limited to a specified class of speakers or to discussion of specified subjects—thus the term "limited public forum."). In limited public forums, the state may restrict expression so long as the restriction "(1) does 'not discriminate against speech on the basis of viewpoint' and (2) is 'reasonable in light of the purpose served by the forum.'" *Chui*, 260 F.3d at 346 (quoting *Good News Club v. Milford Cent. Sch.*, 533 U.S. 98, 106-07 (2001)).

The final forum category is the nonpublic forum. This consists of government-owned property that "is not by tradition or designation open for public communication." *Id.* at 347. Because they are owned by the government, nonpublic forums are not private forums, and thus are still subject to First Amendment constraints. In nonpublic forums the government can restrict speech as long as the restrictions are "reasonable and [are] not an effort to suppress expression merely because public officials oppose the speaker's view." *Perry Educ. Ass'n*, 460 U.S. at 46.

Under Fifth Circuit law, it is unclear what category the public comment portion of a school board meetings falls into. In certain situations the court has held that "events such as school board meetings can rise to the level of designated public forums, such that regulation of public expression at such meetings would be subject to strict scrutiny." *Chiu*, 260 F.3d at 348. In others, however, the board meeting is construed as a limited public forum. *See e.g.*, *Fairchild v. Liberty Indep. Sch. Dist.*, 597 F.3d 747, 759 (5th Cir. 2010) ("The board meeting here—and the comment sessions in particular—is a limited public forum . . . . Plainly, public bodies may confine their meetings to specified subject matter and may hold nonpublic sessions to transact business." (citations and quotation marks omitted)).

Here, the Court finds that the NEISD school board meetings are properly categorized as limited public forums. The school board may restrict the subject matter of these sessions to

issues that involve the school system and its governance, and indeed, the school board's policies explicitly contemplate that it will limit public comments to certain subjects or classes of people.  *See* Board Policy BED (Legal) ("The Board may confine its meetings to specified subject matter.").   So the school board has opened a nontraditional public forum and has restricted the subject matter to issues pertinent to the NEISD.   As the Fifth Circuit stated in *Fairchild*, "the Board meeting here fits the hornbook definition of a limited—not designated—public forum, in which the State is not required to and does not allow persons to engage in every type of speech."  597 F.3d 747, 759.   Therefore, under current Fifth Circuit law, the restrictions placed on Wilson will stand unless (1) they are not viewpoint-neutral or (2) they are not reasonable in light of the purposes served by the forum.[2]  *Perry Educ. Ass'n*, 460 U.S. at 46.

---

[2]     Although this is the long-standing test for determining whether a restriction is permissible in a limited public forum in the Fifth Circuit, other circuits have found that a different standard should apply when—like here—the excluded speech falls within the category of speech permitted in the limited public forum.  As stated above, a general speech restriction in a limited public forum is justified if it is viewpoint-neutral and is reasonable in light of the forum's purpose.  This explains why a school board may prevent someone from opining on American foreign policy during its public comment sessions.  This restriction is viewpoint-neutral and is reasonable in light of the meeting's purpose—school district governance.  But when the school board restricts speech that *falls within the designated category* for which the forum was opened, it is a very different situation.  Other circuits, recognizing that the limited public forum is a subset of the designated public forum, have held that the designated public forum analysis is appropriate in these situations.  *See American Civil Liberties Union v. Mote*, 423 F.3d 438, 444 (4th Cir. 2005) (noting that within a limited public forum, if the government excludes a speaker who falls within the class for which the forum is made generally available, then an "internal standard" applies, and the exclusion is subject to strict scrutiny); *Hotel Emps. & Rest. Emps. Union, Local 100 v. City of N.Y. Dep't of Parks & Rec.*, 311 F.3d 534, 545 (2d Cir. 2002) ("In a limited public forum, strict scrutiny is accorded only to restrictions on speech that falls within the designated category for which the forum has been opened." (citations and quotation marks omitted)).

        If Wilson's CTW was evaluated under the designated forum's strict scrutiny standard, she would prevail on her freedom of expression claim.  Although, (as will be discussed below) the CTW was content-neutral, it was not narrowly tailored and did not leave open ample alternative channels of communication.  If the NEISD was worried that Wilson was going to assault someone, they could have taken precautions that fell short of banning Wilson form the meetings altogether.  Additionally, even though Wilson was given permission to write the board or send a representative to the board meetings on her behalf, these do not constitute adequate alternative channels of communication.  *See Bay Area Peace Navy v. United States*, 914 F.2d 1224, 1229 (9th Cir. 1990) ("[A]n alternative mode of communication may be constitutionally inadequate if the speaker's 'ability to communicate effectively is threatened'" (quoting *Members of City Council v. Taxpayers for Vincent*, 466 U.S. 789, 812 (1984))); *Cyr v. Addision Rutland Supervisory Union*, 60 F. Supp. 3d 536, 549-50 (D.Vt. 2014) (finding that a parents "speech may not have had the same effect on the school board or other members in attendance at the school board meetings were he not physically present," and that therefore, allowing him to participate in the board meeting by phone was not an adequate alternative channel of communication).

The facts in this case clearly indicate that the NEISD did not engage in viewpoint discrimination by issuing Wilson a CTW.  The CTW was issued due to the concern that Wilson posed a threat to school system staff; it had nothing to do with the content of her speech or a particular viewpoint she espoused.[3]  So the restrictions placed on Wilson's speech were a viewpoint-neutral collateral consequence of a CTW that was merely intended to regulate her conduct.

The only question that remains then is whether the restrictions placed on Wilson's speech—namely banning her from participating in the public comment portion of a school board meeting—were reasonable in light of the forum's purpose.  The reasonableness review in this situation, however, requires a slightly different analysis than when a court reviews the reasonableness of a forum's subject matter restrictions.  Here, the NEISD placed a categorical ban on the speech of *one individual*.  A restriction targeting the speech of an individual rather than the public generally is equivalent to an injunction against speech, and as the Supreme Court has explained, "[i]njunctions . . . carry greater risks of censorship and discriminatory application than do general ordinances."  *Madsen v. Women's Health Ctr.*, 512 U.S. 753, 764 (1994).  Thus, when evaluating injunctions against speech, courts must ensure that the standard of review they apply is "sufficiently rigorous" to account for these risks.  *Id.*  So the specific question the Court addresses here is whether, in light of the purpose of the NEISD school board meetings, it was reasonable to issue an injunction forbidding Wilson from attending board meetings and thereby banning her speech in the forum.

Under the particular circumstances of this case, the Court finds that it was unreasonable for the NEISD to ban Wilson from the public comment portions of the NEISD board meetings. While the Court acknowledges that it was well within the NEISD's rights to prevent Wilson from

---

[3]   Wilson argues that "the select use of the policy by Defendant [NEISD] demonstrates that the policy is not content-neutral," but that "encourages official discrimination among speakers based on the content of their speech." (Compl. ¶ 5.1.4). But Wilson has been unable to substantiate this accusation—offering only her subjective belief in support.

being on NEISD property under most circumstances, forums opened by the school board for public comment must be treated differently. Wilson—a concerned guardian of school aged children—was singled out and prevented from engaging in a form of expressive activity granted to all other parents in the school system.  The Court finds this unreasonable, especially when the NEISD could have easily taken much less restrictive measures to accomplish the goals of the CTW.  For example, if safety was the board's main concern, they could have told the NEISD police officers at the meeting to closely monitor Wilson.  Or they could have asked Wilson and certain NEISD employees to keep a certain distance from each other at the meetings.  To be clear, the Court is not suggesting that the NEISD's restrictions on Wilson's speech needed to be *narrowly tailored*, but there must at least be *some tailoring* for the restrictions to be reasonable in light of the forum.  Here, there was none.  *See Cyr*, 60 F. Supp. 3d, at 548 ("[A] categorical ban on speech is not tailored at all, as it forecloses a means of communication."); *Cf. Hill v. Colorado*, 530 U.S. 703, 726 (2000) ("[W]hen a content-neutral regulation *does not entirely foreclose any means of communication*, it may satisfy the tailoring requirement even though it is not the least restrictive or least intrusive means of serving the statutory goal.").

Although the CTW issued by the NEISD was viewpoint-neutral, completely foreclosing Wilson's ability to engage in expressive activity at the board meeting would be unreasonable in light of the type of forum.  Thus, because the CTW allowed NEISD officials to grant or deny Wilson permission to participate in the forum, it acted as a prior restraint on her First Amendment freedom of expression.

To the Court's knowledge, only one other district court has addressed a case that presents the exact legal issues encountered here.  That court came to same conclusion this court reaches today: a trespass warning that completely bars a parent from school board meetings violates the parent's freedom of expression.  *See Cyr*, 60 F. Supp. 3d, at 546-50. *Cyr*—a case out of the District of Vermont—involved the father of an autistic child who regularly and zealously raised concerns about his child's education at local school board meetings.

9

*Id.* at 539.   When the father shifted from merely advocating to harassing and threatening, however, the school system had the local police department issue the father a notice against trespass, barring him from all property owned by the school system for two years.   *Id.* at 540-42.   Although the school system told the father he could participate in board meetings via telephone, he was no longer permitted to attend, and thus speak, at the meetings in person.   *Id.* at 542.   The district court, finding that school board meetings are limited public forums, concluded that because the notice against trespass acted as a categorical ban on all speech the father may have wanted to engage in, it violated his First Amendment right to freedom of expression.   *Id.* at 546-50.   Although the *Cyr* court applied a higher standard of review than typical limited public forum analysis, *see supra* note 2, it also found that "a categorical ban on expressive speech singling out an individual does not even satisfy the lower threshold of reasonableness review." *Id.* at 549 (citing *Huminski v. Corsones*, 396 F.3d 53, 92 (2d Cir. 2005)).

To be clear, the Court certainly recognizes that protecting the safety of school staff is a significant government interest.   And because of this, schools may constitutionally remove disruptive individuals, even parents, from school property in response to threats of disruption. *See, e.g.*, *Rodgers v. Duncanville Indep. Sch. Dist.*, No. 3-04-CV-365-D, 2005 WL 770712, at *3 (N.D. Tex. April 5, 2005) (finding no constitutional violation when a school banned a father from the campus after displaying threatening, abusive, and disruptive behavior).   But the CTW here goes too far.   It allows a school system to keep an individual parent from participating in a limited public forum that is open and available to all other parents.   The CTW was a prior restraint on Wilson's First Amendment freedom of expression.   Accordingly, Plaintiff's motion for summary judgment is granted as to her First Amendment prior restraint claim, and Defendants' motion for summary judgment on that claim is denied

**B. Procedural Due Process**

Wilson also alleges that the NEISD's CTW violated her right to procedural due process under the Fourteenth Amendment due to a lack of an adequate process for post-deprivation appeal.

The Due Process Clause of the Fourteenth Amendment provides that "[n]o state shall . . . deprive any person of life, liberty, or property, without due process of law."  U.S. CONST. amend. XIV.  Due process, however "is flexible and calls for such procedural protections as the particular situation demands."  *Morrissey v. Brewer*, 408 U.S. 471, 481 (1972).  Thus, a court's determination regarding whether procedures are constitutionally sufficient requires consideration of three factors: (1) the private interest that will be affected by the official action, (2) the risk of an erroneous deprivation of such interest through the procedures used, and the value of any additional or substitute procedural safeguards, and (3) the government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail.  *City of Los Angeles v. David*, 438 U.S. 715, 716 (2003); *Mathews v. Eldridge*, 424 U.S. 319, 334-35 (1976); *Marco Outdoor Adver., Inc. v. Regional Transit Authority*, 289 F.3d 669, 673 (5th Cir. 2007); *Sys. Contractors Corp. v. Orleans Parish Sch. Bd.*, 148 F.3d 571, 575 (5th Cir. 1998).

Applying these factors, the Court finds first that the private interests at stake are Wilson's First Amendment right to freedom of expression and her ability to exercise this right at school board meetings that are open for public comment.  *First Nat. Bank of Boston v. Bellotti*, 435 U.S. 765, 779 (1978) ("[T]he liberty of speech and of the press which the First Amendment guarantees against abridgment by the federal government is within the *liberty* safeguarded by the Due Process Clause of the Fourteenth Amendment from invasion by state action." (emphasis in original)).

Next, the risk of erroneous deprivation here is high.  First, no protocol exists to govern when NEISD police officers may issue CTWs, giving NEISD officials broad discretion to ban

members of the public from school board meetings.  *Cf. Shuttlesworth v. Birmingham*, 394 U.S.

147, 153 (1969) ("[This Court] ha[s] consistently condemned licensing systems which vest in an

administrative official discretion to grant or withhold a permit upon broad criteria unrelated to

proper regulation of public places.").  Second—and most importantly—the school system failed

to provide any genuine process for appealing the issuance of a CTW. So if a CTW was issued

in error, there was no clearly established way to challenge the school system's action.

Defendants, however, argue that the NEISD *does* have such a process: Board Policy

CKE (Legal).  This policy provides in relevant part:

> In order for a complaint against a District peace officer to be
> considered by the head of the District's police department, the
> complaint must be in writing and signed by the person making the
> complaint.  A copy of the complaint shall be given to the officer
> within a reasonable time after it is filing and no disciplinary action
> shall be taken against the officer as a result of the complaint
> unless a copy is given to the officer.

(Pls.' Mot. Summ. J., Ex. 9).  But this policy doesn't explain how a person can appeal a CTW; it

simply provides a way to file a complaint against an NEISD police officer.  Defendants'

argument that Board Policy CKE (Legal) provided Wilson adequate process strikes the Court as

disingenuous.  When a person gets a speeding ticket, they do not challenge the ticket by filing a

complaint against the officer who issued it.  Likewise, Wilson did not have a complaint against

*the officer*, she had a complaint against the *CTW*.  While the Court agrees with Defendants that

the NEISD was not required to afford Wilson a "trial-type hearing," *see Michell v. Beaumont

Indep. Sch. Dist.* No. 1:05-CV-195, 2006 WL 2092585, at *11 (E.D. Tex. July 26m 2006), they at

least needed to provide her a meaningful opportunity to appeal the CTW.  *Id.*  This requirement

is not fulfilled through a policy that merely allows her to file a complaint against the issuing

officer.

Finally, the government's interest is protecting the safety of the NEISD staff and

minimizing the risk of disruption at school board meetings.  While these are undoubtedly

significant interests, they do not justify the denial of rudimentary due process after the deprivation of a person's First Amendment rights.

Thus, upon balancing the three factors, the Court finds that CTW issued in this case violated Wilson's procedural due process rights by depriving her of a First Amendment right without adequate process.   Accordingly, the Court grant's Plaintiff's Motion for Summary Judgment on her procedural due process claim and denies Defendants' Motion for Summary Judgment on the same.

## C.  Municipal Liability

"[S]chool boards are 'persons' subject to liability under § 1983, but they cannot be held liable under § 1983 on a *respondeat superior* theory." *Lee-Kahn v. Austin Indep. Sch. Dist.*, 567 F. App'x 243, 244 (5th Cir. 2014).   Instead, Plaintiff must show that the school district itself is liable by establishing municipal liability.   "In order to state a claim for municipal liability under . . . § 1983 against a school district in Texas, a plaintiff must provide proof of (1) a policymaker, (2) an official policy, and (3) a violation of constitutional rights whose 'moving force' is the policy or custom." *G.M. ex rel. Lopez v. Shelton*, 595 F. App'x 262, 265 (5th Cir. 2014) (quoting *Rivera v. Hous. Indep. Sch. Dist.*, 349 F.3d 244, 247 (5th Cir. 2003)).

In her Report and Recommendation, Judge Mathy concluded that while there was a policy or custom in place, "plaintiff ha[d] not provided summary judgment evidence to establish, and the record d[id] not reflect, the board had actual or constructive knowledge of the policy." (Report and Recommendation, at 66).   The Court agrees with and adopts Judge Mathy's analysis on whether an official custom or policy existed.   (*See id.* at 65-66 ("[T]he NEISD police department's practice of issuing CTWs constitutes a persistent practice which, although not specifically authorized by officially adopted and promulgated policy, is so common and well settled as to constitute a custom.").   The Court disagrees, however, with the remainder of Judge Mathy's analysis on this issue.   Here, there was a policymaker because, as Judge Mathy states in her Report and Recommendation, "the Board of Trustees promulgated a generally applicable

statement or policy—NEISD Board Policy (CKE) Legal—and it appears the custom of issuing CTWs is simply an implementation of that policy."   (Report and Recommendation, at 66). Therefore, (1) issuing CTWs meets the official policy requirement; (2) the NEISD Police Department's ability to do this stems from an board policy promulgated by the school district's ultimate policymaker—the Board of Trustees; and (3) as thoroughly explained above, issuing the CTW violated Wilson's First and Fourteenth Amendment rights.   Thus, all three requirements for establishing municipal liability are met.

**D.  Remainder of the Report and Recommendation**

The Court finds that the remainder of Judge Mathy's Report and Recommendation is correct and should be adopted for substantially the reasons stated therein.   This includes her findings on (1) Plaintiff's claims for injunctive relief, (2) Plaintiff's remaining constitutional claims, and (3) the liability of the individually named Defendants.

<b>CONCLUSION</b>

For the foregoing reasons,

**IT IS ORDERED** that the magistrate judge's Report and Recommendation (Dkt. #71) is **ADOPTED IN PART** and **REJECTED IN PART**.

**IT IS FURTHER ORDERED** that Plaintiff Columba Wilson's Motion for Summary Judgment (Dkt. #54) is **GRANTED IN PART** and **DENIED IN PART**.   Summary Judgment is granted as to Wilson's First Amendment prior restraint on freedom of expression claim and as to the related Fourteenth Amendment procedural due process claim, insofar as those claims are brought against the NEISD.   Summary judgment is denied as to (1) Plaintiff's claim for injunctive relief, (2) all of Plaintiff's claims against the individually named Defendants, and (3) all of Plaintiff's claims other than her First Amendment prior restraint on freedom of expression claim and the related Fourteenth Amendment procedural due process claim brought against the NEISD.

**IT IS FURTHER ORDERED** that Defendants NEISD, Joel Treviño, Brian G. Gottardy, Wallace McCampbell, Mark Contreras, Gabriel Dominguez, Susan Galindo, and Letti Bresnahan's Motion for Summary Judgment (Dkt. #51) is **GRANTED IN PART** and **DENIED IN PART**.  Summary judgment is granted insofar as it pertains to (1) Plaintiff's claim for injunctive relief, (2) all of Plaintiff's claims against the individually named Defendants, and (3) all of Plaintiff's claims other than her First Amendment prior restraint on freedom of expression claim and the related Fourteenth Amendment procedural due process claim brought against the NEISD.  Summary judgment is denied on Plaintiff's First Amendment prior restraint on freedom of expression claim and the related Fourteenth Amendment procedural due process claim, insofar as those claims are brought against the NEISD.

### REMAINING ISSUES

For the reasons explained above, the Court concludes that Wilson is entitled to declaratory relief, which will be entered in the Court's Final Judgment.  This leaves two outstanding issues in this matter: damages and attorney's fees.  Attorney's fees should be addressed pursuant to Western District of Texas Local Rule CV-7(j).  The damages issue, however, requires further briefing before the Court may move forward.  Although it appears likely that no damages—or at most nominal damages—will be appropriate in this matter, the Court would like Plaintiff to directly address this remedy in additional briefing.

Therefore, **IT IS FURTHER ORDERED** that Plaintiff should submit additional briefing addressing: (1) whether damages are still being sought in this matter; (2) if so, why damages are appropriate; and (3) whether the Court will need to hold a jury trial to determine the appropriate amount of damages.

The additional briefing should be no more than ten (10) pages in length, and should be **filed on or before October 13, 2015**.  Defendants may file a response of no more than ten (10) pages **within seven (7) days** of when Plaintiff's files her additional briefing.

**SIGNED** on September 30, 2015.


_____
ROBERT L. PITMAN
UNITED STATES DISTRICT JUDGE

16